| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 4:15-CR-207(11) |
| | § | CASE NO. 4:17-CR-221 |
| JEROME RUSSELL KELLY | § | CASE NO. 4:17-CR-222 |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Jerome Russell Kelly's ("Kelly") *pro se* Motion for Compassionate Release (#504 in Case No. 4:15-CR-207(11); #25 in Case No. 4:17-CR-221; #31 in Case No. 4:17-CR-222), wherein he requests, for the third time, that the court release him from imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A) due to his health problems, the threat of Coronavirus Disease 2019 ("COVID-19"), and his rehabilitation.[1] Kelly also filed an Addendum to Motion for Compassionate Release (#511 in Case No. 4:15-CR-207(11); #30 in Case No. 4:17-CR-221; #36 in Case No. 4:17-CR-222). The Government filed a response in opposition. United States Pretrial and Probation Services ("Probation") submitted an updated report, which recommends the denial of Kelly's motion. Having considered the motion, Kelly's filings, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.    Compassionate Release Reconsideration

When a defendant moves for compassionate release, he must establish three criteria. *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021). First, he must meet one of two

---

[1] Kelly initially filed Motions for Compassionate Release (#s 485, 486) in August 2020, which the court denied on September 8, 2020 (#493). Kelly also filed a Motion for Reconsideration (#495), which the court denied on December 1, 2020 (#496). Accordingly, the court will construe Kelly's present motion as a motion for reconsideration of the court's September 8, 2020, Order.

conditions listed in § 3582(c)(1)(A)—either the defendant has extraordinary and compelling reasons that warrant a reduction under 18 U.S.C. § 3582(c)(1)(A)(i) or the defendant is at least 70 years of age, has served at least 30 years in prison, and meets the additional requirements of 18 U.S.C. § 3582(c)(1)(A)(ii). *Id.* at 391.  Second, the defendant "must show that compassionate release is consistent with the applicable policy statements from the [United States Sentencing Commission ("Commission")]."  *Id.* at 392.  Third, the defendant "must convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors."[2]  *Id.*; *accord United States v. Keys*, 846 F. App'x 275, 276 (5th Cir. 2021); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021).

In his initial motion for compassionate release, Kelly, age 49, asserted that extraordinary and compelling reasons for his release existed due to his medical condition and the dangers posed by COVID-19.  In its Memorandum and Order, dated September 8, 2020 (#493), the court considered Kelly's medical condition and the threat of COVID-19 and determined that his circumstances did not constitute an extraordinary and compelling reason warranting his early release from prison.  The United States Court of Appeals for the Fifth Circuit subsequently held in *Shkambi* that when a defendant files a motion for compassionate release on his own behalf, the Sentencing Commission's policy statement in § 1B1.13 is not applicable because that policy

---

[2] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guideline ("U.S.S.G.") provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim.  18 U.S.C. § 3553(a).

statement governs only motions filed by the Director of the BOP.  993 F.3d at 392; *Cooper*, 996 F.3d at 287-88.  Nevertheless, while recognizing that they are not binding, the court views the Commission's policy statement contained in § 1B1.13 and the commentary thereto as providing guidance regarding the types of reasons that may be deemed sufficiently "extraordinary and compelling" to warrant compassionate release. *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive, the commentary to § 1B1.13 informs [the court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."); *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (upholding denial of compassionate release and recognizing that the court was guided in its analysis by the commentary to U.S.S.G. § 1B1.13).  Upon reconsideration, the court again finds that Kelly's medical condition and the risk posed by COVID-19 do not suffice.

A.      Medical Condition

In the instant motion, Kelly contends that he is eligible for compassionate release due to his "ongoing medical conditions."  Although not binding on the court, § 1B1.13 suggests that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  U.S.S.G. § 1B1.13 cmt. n.1(A).

According to Kelly's BOP medical records, he has been diagnosed with hyperlipidemia, epilepsy/seizure disorder, hypertension, ischemic cardiomyopathy, gastro-esophageal reflux disease, an acute duodenal ulcer with hemorrhage, polyp of colon, and low back pain.  Kelly is prescribed acetaminophen and methylprednisolone for low back pain; nitroglycerin, aspirin, isosorbide mononitrate, sacubitril-valsartan, and clopidogrel bisulfate for ischemic cardiomyopathy; lisinopril to treat his high cholesterol; atorvastatin, furosemide, and potassium chloride to manage his hypertension; carvedilol for hypertension and ischemic cardiomyopathy; and pantoprazole sodium for gastro-esophageal reflux disease and acute duodenal ulcer.

On July 24, 2021, Kelly had a seizure episode that was witnessed, at which time he was diagnosed with a seizure disorder. During a follow-up medical encounter on July 25, 2021, however, Kelly reported, "I'm fine now."  A medical noted dated January 26, 2022, indicates that Kelly's seizures are "controlled."  On April 19, 2022, Gonzalo Hidalgo, M.D. ("Dr. Hidalgo"), observed:  "He had an [electroencephalogram] which was unremarkable.  At this time[,] I do not have clear evidence of seizure disorder or epilepsy."  Dr. Hidalgo also remarked that Kelly's "spell most likely was related to hypotension secondary to cardiac disease."

Kelly's most recent blood pressure readings, 129/87 on May 4, 2022, 137/87 on April 26, 2022, and 128/76 on April 20, 2022, indicate that he is "at risk" of having high blood pressure.[3] On July 27, 2021, Richard Griffin, M.D./C.D., commented that Kelly's cardiac system is

---

[3] According to the Centers for Disease Control and Prevention ("CDC"), a "Normal" systolic level is less than 120 mm Hg with a diastolic of less than 80 mm Hg; the "At Risk" systolic range is 120 to 139 mm Hg with a diastolic range of 80 to 89 mm Hg; and a "High Blood Pressure" systolic level is 140 mm Hg or higher with a diastolic of 90 mm Hg or higher.

"stable," lipids are "at goal," and hypertension is "at goal." On September 1, 2021, Franklin West, R.N., noted: "All systems are with[in] normal limits at the time of the assessment."

According to his medical records, Kelly had a stent placement in 2010. During a medical encounter on May 18, 2021, Kelly indicated that he gets "chest pains every now and then," that he tries "to walk everyday," and that he "has started to improve." On July 27, 2021, Kelly reported that he has "no chest pain, no palpitations." That day, Kelly had a chest x-ray, which revealed "no evidence of acute disease." A medical note dated May 4, 2022, reflects that Kelly's cardiovascular system is "within normal limits." As of January 26, 2022, Kelly is prescribed a LifeVest, a wearable defibrillator, to aid with his heart issues. Kelly's cardiologist has recommended an implantable cardioverter defibrillator (ICD) for Kelly, which has been requested by BOP's medical staff as of May 6, 2022.

Kelly is classified as a BOP Medical Care Level 3 inmate. According to the BOP's Clinical Practice Guidance, dated May 2019, Care Level 3 inmates "are outpatients who have complex, and usually chronic, medical[,] or mental health conditions and who require frequent clinical contacts to maintain control or stability of their condition, or to prevent hospitalization or complications. They may require assistance with some activities of daily living (ADLs) that can be accomplished by inmate companions. Stabilization of medical or mental health conditions may require periodic hospitalization." Kelly is in the process of being transferred to a federal medical center to better monitor and care for his medical issues.

Nevertheless, none of Kelly's medical conditions are terminal or substantially diminish his ability to provide self-care, nor do they otherwise present extraordinary and compelling reasons justifying compassionate release. *See Thompson*, 984 F.3d at 433. To the contrary, Kelly's

conditions are well managed with medication.  *See id*.  Kelly's Medical Duty Status Report, dated

May 12, 2022, indicates that he is housed in a single cell in general population, has no work

restrictions, and is cleared for food service, but he has a physical restriction regarding all sports.

The court acknowledges that, according to the CDC website, some of Kelly's underlying medical

conditions—specifically, cardiomyopathy and hypertension—can make him more likely to become

severely ill should he contract COVID-19; nonetheless, such commonplace afflictions do not make

Kelly's case "extraordinary."  *See id*. at 434.

According to the CDC, 45% of the adults in the United States (108 million) have

hypertension, and of those, only about 24% have their condition under control.  In addition, more

than 12% of the adult population of the United States (29 million) has high cholesterol.  In view

of their pervasiveness, high blood pressure and high cholesterol cannot be deemed "extraordinary"

in order to merit compassionate release.  *See Thompson*, 984 F.3d at 434 (noting that neither

hypertension nor high cholesterol made the defendant's case "extraordinary" because "nearly half

of the adult population in the United States suffers from hypertension" and "roughly 12% of

Americans suffer from high cholesterol"); *United States v. Hodgin*, No. 4:15-CR-40110-02-KES,

2021 WL 928179, at *3 (D. S.D. Mar. 11, 2021) (denying compassionate release to inmate who

suffers from kidney disease, Type 2 diabetes, hypertension, hyperlipidemia, arthritis, and several

other medical conditions); *United States v. Slone*, No. 7:12-05-KKC-4, 2021 WL 164553, at *1

(E.D. Ky. Jan. 19, 2021) (holding that inmate who suffered from heart disease (for which he had

a stent), chronic obstructive pulmonary disease (COPD), high cholesterol, obesity, and depression

had not established extraordinary and compelling reasons for compassionate release as his

condition was not terminal and did not diminish his ability to provide self-care within the prison

environment); *United States v. Durham*, No. 3:18-cr-251-MOC-DCK-1, 2020 WL 5577884, at

*2 (W.D.N.C. Sept. 17, 2020) (finding the fact that the defendant has hypertension, a condition

that may increase his risk for severe illness from COVID-19, without more, does not present an

"extraordinary and compelling reason" for compassionate release); *United States v. Wilson*, No.

2:18cr132, 2020 WL 4901714, at *5 (W.D. Wash. Aug. 20, 2020) (rejecting the notion that

inmate's hypertension claim was sufficient to justify early termination of sentence).

Courts have also found that an inmate's having cardiomyopathy is not sufficient to establish

"extraordinary and compelling" circumstances.  *See United States v. Whited*, No. 21-1644, 2022

WL 1259028, at *2 (7th Cir. Apr. 28, 2022) (affirming denial of compassionate release when the

district court concluded that the defendant, who suffered from cardiomyopathy, hyperlipidemia,

and other medical conditions, failed to establish extraordinary and compelling reasons for release);

*United States v. Reeves*, No. 7:15CR00047-001, 2022 WL 72780, at *1 (W.D. Va. Jan. 7, 2022)

(finding that a defendant, who suffered from obesity, diabetes, and cardiomyopathy, had not

established extraordinary and compelling reasons for his early release); *United States v. Bolze*, 460

F. Supp. 3d 697, 709 (E.D. Tenn. 2020) (finding that extraordinary and compelling circumstances

did not exist where the defendant suffered from congestive heart failure, hyperlipidemia,

hypertension, cardiomyopathy, and migraine headaches).  Furthermore, courts have declined to

recognize a history of seizures as an "extraordinary and compelling" circumstance.  *See United*

*States v. Robinson*, No. 21-2459, 2022 WL 777232, at *1 (3d Cir. Mar. 14, 2022) (affirming

denial of compassionate release where the defendant's medical conditions—seizures, arthritis,

obesity, high blood pressure, and prediabetes—were well controlled); *United States v. Greene*, 847

F. App'x 334, 335 (6th Cir. 2021) (affirming district court's denial of compassionate release to

an inmate who suffered from a history of seizures as well as heart issues, high blood pressure, and type 2 diabetes); *United States v. Caley*, No. 91-CR-80668, 2022 WL 1449699, at *2 (E.D. Mich. May 9, 2022) (denying compassionate release where the defendant suffered from epilepsy, a seizure disorder, and Hepatitis C).

In this instance, Kelly's BOP records reveal that he is housed in general population, is ambulatory, has no medical restrictions, has regular duty work assignments, is cleared for food service, and, according to Kelly, his current work detail is the Unicor clothing factory.  He is able to provide self-care in the institutional setting and is not limited in his activities of daily living. Thus, Kelly has failed to establish the existence of medical problems that would constitute extraordinary and compelling reasons to reduce his sentence.

B.      Rehabilitation

Kelly maintains that his post-sentence rehabilitation, evidenced by his work history, his lack of disciplinary infractions, and the courses he has taken, establishes extraordinary and compelling reasons for compassionate release.    While the court may consider rehabilitation efforts, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t); *see Shkambi*, 993 F.3d at 392; *United States v. Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020) (holding that a district court's discretion in sentencing is broad; however, there is a "statutory limit on what a court may consider to be extraordinary and compelling . . . [and] '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" (quoting 28 U.S.C. § 994(t))); *United States v. Hudec,* No. CR 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19, 2020) ("While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence

reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone."); *cf. United States v. Whitehead*, 986 F.3d 547, 551 (5th Cir. 2021) (upholding the denial of a sentence reduction from a life sentence and finding that the court may, but is not required, to consider a defendant's post-conviction rehabilitative efforts when evaluating a motion for reduction under § 404 of the First Step Act).  In fact, "[m]aking good use of one's time in prison is not uncommon, and indeed is expected." *United States v. Blanco*, No. 16-CR-408 (CS), 2021 WL 706981, at *2 (S.D.N.Y. Feb. 22, 2021) (quoting *United States v. Alvarez*, No. 89-CR-229, 2020 WL 4904586, at *7 (E.D.N.Y. Aug. 20, 2020)).  While Kelly has maintained a good disciplinary record while incarcerated, the Seventh Circuit has found a similar argument not to be extraordinary and compelling.  *See United States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021) (rejecting compassionate release of a prisoner reasoning that "[m]ost nonviolent criminals maintain good disciplinary records").

Thus, although Kelly highlights commendable achievements, he has not presented sufficiently extraordinary and compelling accomplishments or circumstances to merit compassionate release under the facts of this case.  *See United States v. Lewis*, No. 17-CR-28-FPG, 2021 WL 4519795, at *3 (W.D.N.Y. Oct. 4, 2021) (finding defendant's efforts at rehabilitation and plans to start a new life elsewhere to be commendable and recognizing the unusual burdens he faced in prison but finding those considerations not to undermine the factors that led to his original sentence—his offense, his criminal history, and the need for deterrence); *United States v. Boyd*, No. 3:17-CR-37-TAV-DCP-4, 2021 WL 5094903, at *4 (E.D. Tenn. Nov. 2, 2021) (the court, while recognizing defendant's efforts to improve himself, did not find his rehabilitation efforts to be so extraordinary as to outweigh the other sentencing factors); *United*

*States v. Willsey*, No. 3:00-cr-00438-HZ, 2021 WL 4462889, at \*2 (D. Ore. Sept. 28, 2021)

(although finding defendant's steps toward rehabilitation to be laudable, the court ruled that they

did not present an extraordinary circumstance that would justify compassionate release,

particularly given the seriousness of his offenses of conviction); *United States v. Rounds*, No. 10-

CR-239S (2), 2021 WL 4437170, at \*4 (W.D.N.Y. Sept. 28, 2021) (commenting that defendant's

efforts at rehabilitating himself were laudable and should be continued, but concluding that they

did not alone or in combination with his other arguments constitute an extraordinary and

compelling reason for compassionate release).  Similarly, the court hopes that Kelly will continue

on the path to rehabilitation, but declines to exercise its discretionary authority under § 3582 at

this time based on either his medical condition or his rehabilitation efforts.  *See Lewis*, 2021 WL

4519795, at \*3.

> C.     COVID-19

Kelly further expresses concerns about contracting COVID-19 while in prison.

Nevertheless, as of May 13, 2022, the figures available at www.bop.gov list 0 inmates (out of a

total inmate population of 879) and 0 staff members at Federal Correctional Institution Oakdale

I, the facility in which Kelly is housed, as having confirmed positive cases of COVID-19, 692

inmates and 96 staff members who have recovered, and 7 inmates who succumbed to the disease.

Indeed, according to Kelly's medical records, he tested positive for the disease in November 2020

and, as of November 30, 2020, had recovered from the virus.  Thus, it appears that the facility

where Kelly is housed is handling the outbreak appropriately and providing adequate medical care.

Although Kelly expresses legitimate concerns regarding COVID-19, he does not establish

that the BOP cannot manage the outbreak within his correctional facility or that the facility is

specifically unable to treat Kelly, if he were to contract the virus once again and develop COVID-19 symptoms, while incarcerated.  *See Thompson*, 984 F.3d at 435 ("Fear of COVID doesn't automatically entitle a prisoner to release."); *Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Banks*, No. CR 15-0080-02, 2020 WL 6839267, at *4 (W.D. La. Nov. 20, 2020) ("This Court cannot equate the generalized fear of COVID-19 to an extraordinary and compelling reason to support compassionate release, nor will it undermine BOP's criteria to determine eligibility for sentence reductions or home confinement."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, 455 F. Supp. 3d 285, 292 (W.D. La. 2020))); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification").  Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish exceptional and compelling circumstances warranting compassionate release.  *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had

failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19).

Courts have repeatedly denied COVID-19-based motions for compassionate release filed by inmates who, like Kelly, have already contracted and recovered from the virus.  *See*, *e.g.*, *United States v. Gipson*, 829 F. App'x 780, 781 (9th Cir. 2020) (affirming denial of compassionate release for a defendant with preexisting conditions who had already contracted COVID); *United States v. Marley*, No. 16-CR-374 (VEC), 2020 WL 7768406, at *2 (S.D.N.Y. Dec. 30, 2020) ("[A] defendant's successful recovery from COVID-19 weighs against granting that defendant compassionate release." (quoting *United States v. Delorbe-Luna*, No. 18-CR-384, 2020 WL 7231060, at *2 (S.D.N.Y. Dec. 7, 2020))); *United States v. Stockman*, No. H-17-116-2, 2020 WL 5269756, at *3 (S.D. Tex. Aug. 26, 2020) (noting that when an inmate is infected and recovers from COVID-19, the courts have found the risks of infection or severe symptoms or effects because of underlying conditions change and diminish); *United States v. Baker*, No. CR 16-179, 2020 WL 4584195, at *4 (E.D. La. Aug. 10, 2020) ("Courts have denied COVID-19-based motions for compassionate release filed by inmates who have already contracted the virus."); *United States v. Shrout*, No. 15-CR-438, 2020 WL 3483703, at *4 (D. Or. June 26, 2020) ("[Defendant] has already contracted COVID-19 and, crucially, the BOP has properly managed the disease.").

Moreover, the BOP is in the process of administering the COVID-19 vaccine to inmates and staff.  To date, the BOP has administered approximately 316,976 doses of the vaccine. According to www.bop.gov, Federal Correctional Complex Oakdale, where the defendant is housed, has fully inoculated 1,938 inmates and 258 staff members.  Indeed, according to Kelly's

BOP medical records, he received the first dose of the Pfizer-BioNTech vaccine on April 15, 2021, the second dose on May 5, 2021, and a third dose on January 26, 2022.  In the Fifth Circuit and elsewhere, courts have denied early release to inmates with a variety of medical conditions who have been vaccinated for COVID-19.  *See United States v. Walker*, No. 20-cr-20027, 2021 WL 2474088, at *3 (C.D. Ill. June 17, 2021) (holding that because defendant was fully vaccinated, his underlying health conditions—diabetes, heart disease, high blood pressure, asthma, and substance abuse—alone, were insufficient to establish extraordinary and compelling reasons justifying compassionate release); *United States v. Parham*, No. 1:19-CR-133-LG-RHW-1, 2021 WL 1911899, at *2 (S.D. Miss. May 12, 2021) (finding that "generalized concerns of contracting COVID-19[] are not an 'extraordinary and compelling reason'" where the defendant had received the COVID-19 vaccine); *United States v. Meyer*, No 1:14-cr-00148-01-MC, 2021 WL 1895240, at *1-2 (D. Ore. May 11, 2021) (denying compassionate release to inmate with heart disease, obesity, hyperlipidemia, and a history of smoking because he was fully vaccinated and there was a low infection rate at the facility where he was housed); *United States v. Schad*, No. CR 2:17-225-3, 2021 WL 1845548, at *4 (S.D. Tex. May 5, 2021) (denying compassionate release where the defendant had been fully vaccinated against COVID-19); *United States v. Wakefield*, No. 1:19-CR-00095-MR-WCM, 2021 WL 640690, at *3 (W.D.N.C. Feb. 18, 2021) ("Because [the defendant] has already contracted the virus and recovered without complication, and because he is in the process of being vaccinated, the [d]efendant cannot meet his burden of establishing that his COVID-19 risk is an extraordinary and compelling reason for his release."); *United States v. Grummer*, No. 08-CR-4402-DMS, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) (denying compassionate release and noting that "[a]lthough Defendant suffers from several chronic medical

13

conditions, his vaccination significantly mitigates the risk that he will contract COVID-19"); *United States v. Beltran*, No. 6:16-CR-00004, 2021 WL 398491, at \*3 (S.D. Tex. Feb. 1, 2021) (denying compassionate release to a high-risk inmate with myriad underlying medical conditions who received the vaccine, finding that "vaccination significantly reduces [the] risk of contracting COVID-19 or experiencing complications related to a COVID-19 infection"); *accord United States v. Nunez-Arias*, No. CR H-16-436, 2021 WL 1537323, at \*3 (S.D. Tex. Apr. 19, 2021).

D.       Section 3553(a) Factors

The court further finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a).  *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Shorter*, 850 F. App'x 327, 328 (5th Cir. 2021) (finding that the court did not abuse its discretion in denying compassionate release after balancing the § 3553(a) factors); *Keys*, 846 F. App'x at 276; *Shkambi*, 993 F.3d at 392; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020).  Kelly's three offenses of conviction entail his participation for a number of years in a large-scale, international cocaine and methamphetamine trafficking organization connected to the Sinaloa Cartel, as well as a money laundering operation, that spanned from Mexico through California and Texas and then across the United States.  His role in the conspiracy was to supply coconspirators with kilogram quantities of cocaine and gram quantities of methamphetamine from various sources, which was imported from Mexico, for distribution to others in the Eastern District of Texas, the State of Mississippi, and elsewhere.

Kelly served as a leader/organizer of the drug-trafficking organization, who was responsible for directing and coordinating the distribution of multi-kilogram shipments of cocaine

and methamphetamine throughout multiple states.  The investigation by law enforcement revealed

that Kelly was a wholesale distributor of kilogram quantities of cocaine and had been since as early

as 2001.   He subsequently became involved in the distribution of methamphetamine.   A

coconspirator initially supplied Kelly with kilogram quantities of cocaine and methamphetamine,

who utilized couriers to deliver large shipments of the drugs to Mississippi.   Upon the

coconspirator's arrest, Kelly obtained cocaine and methamphetamine directly from a source of

supply in Mexico and continued to do so after the coconspirator was released from state prison.

The investigation further revealed that Kelly purchased multiple real properties in Mississippi and

a vehicle using proceeds from narcotics transactions.  Kelly was ultimately held responsible for

450 kilograms of cocaine and 409.7 net grams of methamphetamine (actual).  Although Kelly was

allowed to plead guilty to all three offenses pursuant to a binding plea agreement that called for

concurrent sentences of 180 months' imprisonment, his guidelines range in Case Nos. 4:15-CR-

207(11) and 4:17-CR-221(1) was 324 to 405 months, and in Case No. 4:17-CR-222(1), it was 240

months.

Kelly has an extensive criminal history dating back to age 19, including prior convictions

for sale of a controlled substance (cocaine), manslaughter (reduced from murder)[4], possession of

drug paraphernalia, and reckless driving.  Kelly's term of probation for selling cocaine was

revoked when he committed the offenses of manslaughter and possession of a firearm by a

convicted felon, failed to report to the probation office as directed, provided a urine specimen that

---

[4] The charge of manslaughter stemmed from an altercation with a fellow player while playing
basketball in which Kelly fatally shot the victim in the back with a pistol the following day while also
shooting at the victim's friends.  He was initially charged with murder, but he ultimately pleaded to the
lesser charge of manslaughter.

was positive for marijuana, and failed to avoid injurious or vicious habits by testing positive for marijuana. In *Boyd*, the defendant had a similar history of violating probation, including committing the offense of conviction while on probation. 2021 WL 5094903, at *3. The court found that "defendant's history of violating probation calls into question his respect for the law and whether he would abide by his conditions of supervised release in this case if his motion for compassionate release were granted." *Id*. This court shares the same concerns in reference to Kelly. Moreover, in the PSR, Kelly is identified as a high-ranking member of the Gangster Disciples street gang. In short, Kelly's "criminal history and conduct reflect an unabated propensity for crime." *United States v. Padilla*, No. H-14-174-1, 2021 WL 1517855, at *5 (S.D. Tex. Apr. 16, 2021). Kelly also has a long history of poly-substance abuse (alcohol, marijuana, Xanax, hydrocodone, and codeine) dating from age 13, including the daily use of alcohol, marijuana, Xanax, and hydrocodone up until his most recent arrest.

"Compassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *Chambliss*, 948 F.3d at 693. Where, as here, a prisoner has engaged in "severe" criminal conduct, the district court has discretion to deny compassionate release under the circumstances. *Id.* at 693-94; *accord Keys*, 846 F. App'x at 276 (rejecting Defendant's argument that the court gave too much weight to his criminal history and finding that "a mere disagreement with the court's balancing of the § 3553(a) factors . . . is not a sufficient ground for reversal"). In view of the nature and circumstances of his offense of conviction, his criminal history, and his history of poly-substance abuse, the court cannot conclude that Kelly's early release from prison would afford adequate deterrence or protect the public, as he continues to pose a danger to other persons and to the community as a whole.

16

In addition, granting Kelly compassionate release would fail to provide just punishment for his offense and promote respect for the law.  In *Chambliss*, the Fifth Circuit upheld the denial of compassionate release due to the defendant's not yet having served a sufficient portion of his sentence.  948 F.3d at 694.  The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense."  *Id.* at 693-94.  "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'"  *Chambliss*, 948 F.3d at 693-94; *see Thompson*, 984 F.3d at 434-35 (observing that the courts that have granted compassionate release "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns").  In the instant case, releasing Kelly after he has served only 70 months (or approximately 39%) of his 180-month sentence would similarly minimize the impact of his crime and the seriousness of his offense as well as fall short of providing just punishment and adequate deterrence to criminal conduct.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one."  No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)).  Here, Kelly's track record is similarly a poor one.  There is no reason to believe that Kelly would not revert to his prior

drug-dealing and drug-abusing behavior as well as engaging in other criminal activities if released from prison at this time.

II.      Conclusion

In sum, Kelly has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere.  *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*, 455 F. Supp. 3d at 291-92 (same).  As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Dodge*, 2020 WL 3668765, at *6; *Koons*, 455 F. Supp. 3d at 292.

Consistent with the foregoing analysis, Kelly's *pro se* Motion for Compassionate Release (#504 in Case No. 4:15-CR-207(11); #25 in Case No. 4:17-CR-221; #31 in Case No. 4:17-CR-222) is DENIED.

SIGNED at Beaumont, Texas, this 15th day of May, 2022.

_____

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE

18